Kalima JENKINS, by her next friend, Kamau AGYEI; Carolyn Dawson, by her next friend Richard Dawson; Tufanza A. Byrd, by her next friend Teresa Byrd; Derek A. Dydell, by his next friend Maurice Dydell; Terrance Cason, by his next friend Antoria Cason; Jonathan Wiggins, by his next friend Rosemary Jacobs Love; Kirk Allan Ward, by his next friend Mary Ward; Robert M. Hall, by his next friend Den-

ise Hall; Dwayne A. Turrentine, by his next friend Shelia Turrentine; Gregory A. Pugh, by his next friend David Winters; on behalf of themselves and all others similarly situated; Plaintiffs–Appellees,

American Federation of Teachers, Local 691, Intervenor–Appellee,

v.

STATE OF MISSOURI; John Ashcroft, Governor of the State of Missouri; Wendell Bailey, Treasurer of the State of Missouri; Missouri State Board of Education; Roseann Bentley, Member of the Missouri State Board of Education; Raymond McCallister, Jr., Member of the Missouri State Board of Education; Susan D. Finke, Member of the Missouri State Board of Education; Thomas R. Davis, presiding President, Member of the Missouri State Board of Education; Robert E. Bartman, Commissioner of Education of the State of Missouri; Gary D. Cunningham, Member of the Missouri State Board of Education; Rebecca M. Cook, Member of the Missouri State Board of Education; Sharon M. Williams, Member of the Missouri State Board of Education, Defendants–Appellants,

School District of Kansas City, Missouri; Walter L. Marks, Superintendent thereof, Defendants–Appellees.

No. 91–2512.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1992.

Decided June 2, 1992.

---

Michael J. Fields, Jefferson City, Mo., argued (Bart A. Matanic, on the brief), for appellants.

Arthur A. Benson, II, Kansas City, Mo., argued (Dianne E. Moritz, Michael Thompson and Shirley Ward Keeler, Kansas City, Mo., and David S. Tatel, Kevin J. Lanigan and Wilhelmina M. Wright, Washington, D.C., on the briefs), for appellees.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The State of Missouri appeals from an order of the district court[1] that it pay

---

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

tuition costs of $5,000 for two students of the Kansas City, Missouri, School District participating in a voluntary interdistrict transfer plan to the Missouri City schools. The students were replacements for two of the original group of ten in the program, one of whom had graduated and the other of whom withdrew from the program. The State argues that the expenditures exceed the costs of the receiving school district and should be limited to the actual costs under the standards contained in *Liddell v. Missouri*, 731 F.2d 1294, 1302 (8th Cir.) (en banc) (*Liddell VII*), cert. denied, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). We affirm the judgment of the district court.

This court has in numerous decisions dealing with the Kansas City school desegregation litigation strongly urged the State to work with the suburban school districts surrounding KCMSD to develop a voluntary interdistrict transfer plan. Such a plan in St. Louis has made substantial progress toward desegregating the schools in that area. *See Jenkins v. Missouri*, 807 F.2d 657, 683 n. 30 (8th Cir.1986) (*Jenkins I*), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987); *Jenkins v. Missouri*, 904 F.2d 415, 418 (8th Cir.) (*Jenkins IV*), cert. denied, —— U.S. ——, 111 S.Ct. 346, 112 L.Ed.2d 311 (1990).

The first progress toward a voluntary interdistrict transfer plan in the history of the desegregation efforts in the Kansas City schools occurred when the State called a meeting on May 29, 1990. After the meeting, Missouri City indicated a desire to participate in further discussions. Missouri City has a total enrollment of about 97 students and is a community of less than 400 people[2] in Clay County, Missouri. The parties and Missouri City negotiated a plan, and after some difficulties the plan was completed and presented to the court. The district court approved the plan in large part, but rejected portions of it. Order of Sept. 4, 1990, slip op. at 1. The parties agreed to a modified plan, which the court approved. Order of Sept. 24, 1990, slip op. at 1. The plan provided for

payment of no less than $5,000 per year for each of the original ten students for as long as they chose to continue participating in the plan. The plan provided that this figure was reached on the basis of incomplete information and in the absence of an opportunity for more thorough analysis and for the purpose of agreeing to the program before the beginning of the 1990–91 school year.

After the 1990–91 school year, one student graduated and one withdrew from the plan. Two replacement students were added and the district court ordered tuition of $5,000 per student to be paid to Missouri City, stating: "The budget for 1991–92 is reasonable and necessary for the continued implementation of the voluntary interdistrict transfer component of the plan for the desegregation [of KCMSD] and is approved." Order of May 28, 1991, slip op. at 1.

Before entry of the order, the State argued that Missouri City's actual cost per student was the limit that should be paid under *Liddell VII* and *Jenkins I*. The State filed an affidavit containing detailed calculations showing the cost per student under the *Liddell VII* formula was $3,672.74.

The district court did not specifically address the State's argument in its order. The district court found that the tuition of $5,000 per student was "reasonable and necessary for the continued implementation of the voluntary interdistrict transfer component of the [desegregation] plan." Order of May 28, 1991, slip op. at 1. We give great deference to a district court's exercise of its broad equitable powers in crafting a remedy in school desegregation cases. *Liddell v. Board of Educ.*, 867 F.2d 1153, 1155 (8th Cir.1989) (per curiam); *Jenkins v. Missouri*, 855 F.2d 1295, 1310 (8th Cir.1988) (*Jenkins II*), aff'd in part and rev'd in part, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990); *Davis v. Board of Educ.*, 674 F.2d 684, 688 (8th

---

**2.** The 1991–92 Official Manual of the State of Missouri, p. 754, lists the 1990 population as

348.

Cir.), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982); *Booker v. Special School Dist. No. 1,* 585 F.2d 347, 354 (8th Cir.1978), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979). There was sufficient evidence before the district court to support its finding. The $5,000 tuition figure had been developed by all of the parties for the 1990–91 school year when all agreed that it was a reasonable minimum tuition for the original ten students throughout their tenure in Missouri City. While there was language providing that the terms of the VIT plan would not have "preclusive or precedential effect, with respect to future VIT plans," the district court made clear that the plan would have significant evidentiary value in other suburban districts and that evidence gained as a result of the plan would be important in the event that one of the parties sought to modify the plan, and accordingly refused to order that information gained from the plan could not be used as evidence. Order of Sept. 4, 1990, slip op. at 4. On the basis of this record, the court could certainly consider the plan and its agreed tuition in considering the substitution of the two students one year later. While the State presented an affidavit of a state official that the tuition exceeded actual costs, the district court in making its finding was not required to accept this figure. *See Jenkins v. Missouri,* 942 F.2d 487, 490–91 (8th Cir. 1991) (*Jenkins V*). The court's rejection of that evidence does not make its finding clearly erroneous or its remedial order an abuse of discretion.

The State argues that the tuition should be limited by the formula approved in *Liddell VII.* What we said in *Jenkins v. Missouri,* 890 F.2d 65 (8th Cir.1989) (*Jenkins III*), is a complete answer to this argument:

> We acknowledge that different remedies have been fashioned in the Kansas City desegregation effort than in the comparable St. Louis case. However, the remedies approved in either case do not necessarily restrict the options of the district court in the other. As the Supreme Court has stated, "There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance." *Green v. County School Bd.,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716 (1968).

*Id.* at 69.

In considering voluntary interdistrict transfer plans, the district court certainly should consider the *Liddell* formula, as well as the costs of the receiving district, but in the last analysis the determination of a proper tuition figure must be made by the district court considering the factual setting of the case before it. The record demonstrates that this was done and the district court in looking to the amount agreed to by the parties the year before had sufficient factual support for its finding. We affirm the order of the district court.