13 F.3d 1170
 Kalima JENKINS, By her friend, Kamau AGYEI; Carolyn Dawson,
by her next friend Richard Dawson; Tufanza A. Byrd, by her
next friend, Teresa Byrd; Derek A. Dydell; Terrance Cason,
by his next friend, Antoria Cason; Jonathan Wiggins, by his
next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his
next friend, Mary Ward; Robert M. Hall, by his next
friend, Denise Hall; Dwayne A. Turrentine, by his next
friend, Sheila Turrentine; Gregory A. Pugh, by his next
friend, David Winters, on behalf of themselves and all
others similarly situated, Plaintiffs-Appellees,
American Federation of Teachers, Local 691, Intervenor-Appellee
v.
STATE OF MISSOURI; Mel Carnahan, Governor of the State of
Missouri; Bob Holden, Treasurer of the State of Missouri;
Missouri State Board of Education; Peter Herschend, Member
of the Missouri State Board of Education; Raymond
McCallister, Jr., Reverend, Member of the Missouri State
Board of Education; Susan D. Finke, Vice-President, Member
of the Missouri State Board of Education; Thomas R. Davis,
Member of the Missouri State Board of Education; Robert E.
Bartman, Commissioner of Education of the State of Missouri;
Gary D. Cunningham, President, Member of the Missouri State
Board of Education; Rebecca M. Cook, Member of the Missouri
State Board of Education; Sharon M. Williams, Member of the
Missouri State Board of Education; Jacqueline Wellington,
Member of the Missouri State Board of Education, Defendants-Appellants,
School District, of Kansas City; Walter L. Marks,
Superintendent thereof, Defendants-Appellees.
 No. 93-3274.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 3, 1993.
Decided Dec. 8, 1993.
 
 Michael J. Fields, Asst. Atty. Gen., of Jefferson City, MO, argued (Jeremiah W. Nixon and Bart A. Matanic, on the brief) for appellant.
 Wilhemina M. Wright, Washington, DC, argued (David S. Tatel, Allen R. Snyder, Patricia A. Brannan, Maree F. Sneed and Arthur A. Benson II, on brief), for School Dist., et al.
 Scott A. Raisher, Kansas City, MO, argued (Frederic O. Wickham and Brian P. Wood, on brief), for intervenor American Federation of Teachers.
 Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The State of Missouri once again appeals from orders of the district court[1] granting salary increases to KCMSD personnel as part of the remedy in the ongoing Kansas City school desegregation case. Jenkins v. Missouri, No. 77-0420-CV-W-4, 1993 WL 546576 and 1993 WL 566488 (W.D.Mo. June 30 and July 30, 1993). We affirm.
 
 
 2
 We have in our most recent opinion affirmed salary orders entered by the district court on June 25, 1992, 1992 WL 551568. Jenkins v. Missouri, 11 F.3d 755 (8th Cir.1993). In our opinion we outlined the history of the court's orders dealing specifically with salaries as a part of the desegregation remedy, including the original salary order of September 15, 1987, and a settlement reached by the parties in 1990, and finally, the affirmance of the 1992 order. We need not repeat that history which is set out in our earlier opinion. 11 F.3d at 766-69. Additional hearings were held on salary motions for the school years 1993-94, 1994-95, and 1995-96, and the district court in an order dated June 30, 1993 granted salary increases to be effective in the three school years.
 
 I.
 
 3
 The State first argues that the district court should have denied the salary increase funding, as it is contrary to Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (Milliken II ), in that it does not directly address and relate to the constitutional violation. The State argues that low teacher salaries do not flow from any earlier constitutional violations by the State, and therefore violate Milliken II, as well as Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), requiring the remedial steps be carefully tailored to correct the vestiges of prior segregation and no more. The State particularly targets pay of non-teacher personnel as not flowing from constitutional violations by the State, and beyond the power of the court to reach.
 
 
 4
 We have rejected the same arguments with respect to the 1992-93 salary funding order. See Jenkins v. Missouri, 11 F.3d 755, 766-69 (8th Cir.1993). We reasoned that quality education programs and magnet schools were a part of the remedy for the vestiges of segregation causing a system wide reduction in student achievement in the KCMSD schools. Id. at 767-68. Further, we pointed to the district court's findings that the failure to remove the vestiges of the dual school system precipitated an atmosphere which prevented KCMSD from raising necessary funds, specifically those to maintain required salary levels. Id., at 768-69. It is significant that in its order for the earlier year the district court underscored the language from Freeman v. Pitts, --- U.S. ----, ----, 112 S.Ct. 1430, 1444, 118 L.Ed.2d 108 (1992), that "[t]he essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action." Order of June 25, 1992 at 12. The significant finding of the court with respect to the earlier funding order was that the salary increases were essential to comply with the court's desegregation orders, and that high quality teachers, administrators, and staff must be hired to improve the desegregative attractiveness of KCMSD.
 
 
 5
 We reject the State's argument that the salary order is contrary to Milliken II and Swann.
 
 II.
 
 6
 The State next argues that the district court's finding that KCMSD competes in a national urban market for teachers is clearly erroneous. We first observe that this is an argument that the State did not make with respect to this same finding in the June 1992 district court order. The essence of the State's argument is that it presented four witnesses on the issue of the national urban market, that there was and is no national urban market from which school districts compete for staff in any significant fashion, and even if there was, KCMSD does not compete in it.
 
 
 7
 We have said on numerous occasions, particularly in school desegregation cases, we give great deference to the factual findings of the district court, and reverse only if clearly erroneous, under the standards set forth in Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The litigation before us dates back to 1977, with Judge Clark presiding over the case during the entire period. We traced this history in Jenkins v. Missouri, 807 F.2d 657, 661-62 (8th Cir.1986) (Jenkins I ), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987), and on numerous occasions since that time we have updated the long chronology. Contrary to the State's arguments, there was substantial evidence that the District actively recruits and competes for teachers on a nationwide basis. In 1991 and 1992 KCMSD representatives traveled to New Mexico, North Carolina, Texas, Florida, Wisconsin, Arizona, Colorado, Michigan, New Jersey, Ohio, and New York to recruit qualified teachers. In addition, they advertise in numerous journals on a nationwide basis. Both Superintendent Marks and AFT witness Gould testified about the difficulty in recruiting teachers to work in urban school districts.
 
 
 8
 The evidence introduced was sufficient to support the district court's findings that there was a national urban market. Even the testimony offered by the State tended to confirm this fact. The State's witnesses, though they stated they knew of no national market, conceded that their own school districts did at least some nationwide recruiting.
 
 
 9
 The record provides abundant support for the district court's finding and only ambiguous evidence detracting from it. This record in no way inspires a "definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. at 573, 105 S.Ct. at 1511. Therefore, we may not disturb the district court's finding.
 
 III.
 
 10
 Finally, the State argues that the court abused its discretion in approving the salary increases even if pay raises for some KCMSD employees are permissible. The State contends that the district court abused its discretion when it did not properly assess the results based on evaluative criteria the court had approved earlier, that the expert testimony provided by AFT and KCMSD failed to show that the salary increases had a positive effect on the quality of the KCMSD staff, and that the court had no basis for its finding that the non-teacher personnel were entitled to salary increases. The district court first found that because the salary increases are a necessary component of the desegregation program, the court only needed to determine the extent to which a raise would be appropriate. The district court then conducted a detailed analysis of the proposals submitted by the three parties. Our analysis of the district court's careful factfinding demonstrates that it did not abuse its discretion.
 
 
 11
 In its proposal to the district court, the State argued that only certain of the instructional personnel should receive a one percent plus $400 increase for fiscal year 1994. The State, in essence, asked the court to freeze salaries at fiscal year 1993 levels for the other teachers and the rest of the personnel in the KCMSD. The State has failed to give, either to the district court or to us in this appeal, any clear basis for differentiating between that group of teachers who would be entitled to a raise and those who would not. The district court rejected the State's proposal, stating that the State had failed to submit a serious proposal and that the State's plan was "not consistent with the meaningful implementation of the desegregation program." Order of June 30, 1993 at 4. Viewing the State's proposals as "little or no benefit" to crafting a desegregation remedy, the court pointed to the legislature's failure to pass legislation which would enable the KCMSD to fund its share of desegregation expenses. Id. at 4-5. The district court then carefully weighed the proposals made by the AFT and KCMSD, and concluded that because resources were not available to fund the AFT plan, the court could not implement AFT's suggestions. Id. at 5. The court also referred to its earlier adoption of a less expensive proposal with respect to the Long Range Magnet Plan as evidence that the cost savings there would be used to the benefit of the desegregation program and help facilitate KCMSD's ability to fund salary increases. Id. at 8. We have observed in numerous orders appealed to us that the district court has juridically pruned applications of funding that have been presented to it. We are convinced that the district court's detailed analysis demonstrates a careful exercise of discretion and prevents any conclusion that it abused this discretion.
 
 
 12
 The State also argues that the district court abused its discretion in not considering the evaluative criteria the court had earlier endorsed and approved, and that the salary increase has not changed the basic pattern of hiring or departures in the District. In a sense, the essence of the State's argument is that the district court should have accepted the testimony of its witnesses in this respect, a proposition we have on two occasions in this long litigation rejected. See Jenkins v. Missouri, 942 F.2d 487, 490-91 (8th Cir.1991), and Jenkins v. Missouri, 965 F.2d 654, 657 (8th Cir.1992). It is enough to say that the district court recognized and rejected these specific arguments in its June 1992 order. Order of June 25, 1992 at 9-11, 15. In the order before us, the court clearly stated that it declined to make a different ruling on substantially unchanged evidence. Order of June 30, 1993 at 2. It is evident that the district court had before it substantial evidence of a statistically significant reduction in the turnover rates for full-time employees, a dramatic increase in the percentage of certified employees selecting KCMSD because of the salary increases, and a significant decline in the number of employees lost to other districts. Further, the court heard testimony that the average performance evaluation for the professional employees increased positively and significantly.
 
 
 13
 The State also disputes the two percent per year pay increase the court granted to certain non-teacher personnel, and 2.5 percent per year pay increase to the remaining group, including maintenance workers, cooks and the like. We have already discussed the court's finding that salary increases for KCMSD's personnel were essential to comply with the court's desegregation order. Order of June 25, 1992 at 15. To improve the desegregative attractiveness of the KCMSD, the District must hire and retain high quality teachers, administrators, and staff. Id. In the June 1993 order, the district court reiterated that the salaries of KCMSD personnel are appropriately considered a desegregation expense. Order of June 30, 1993 at 2. It made specific findings with respect to the two percent per year increase for administrators and non-represented employees, and with respect to the operating, warehouse, maintenance, mail room and food service employees, and stated that the evidence reaffirmed that support personnel are critical to the successful implementation of the desegregation program. Id. at 12. These findings are not shown to be clearly erroneous, and are a sufficient basis to support the court's finding with respect to salary increases for those personnel, and accordingly, the district court did not abuse its discretion in ordering these increases.
 
 
 14
 We believe that the court did not abuse its discretion in the June 1993 order. It is evident that in considering the salary proposal now before us, the district court carefully analyzed the positions of the three parties, threaded its way through conflicting evidence, made findings of fact, and accepted the proposals it considered the best for the desegregation remedy of KCMSD. In addition, the district court has not hesitated to reject requests for funding that it determined were not appropriate. Finally, as we have observed in our latest opinion, the district court has requested submissions for funding proposals based on alternative phaseout periods of three, five, seven, or ten years. Thus, all of its careful analysis leads to the inescapable conclusion that the court is completely aware of not only the full scope but also the particular details in the desegregation remedy, and that it is anticipating the day when it may declare certain portions of the program unitary. The district court did not abuse its discretion in the June 1993 order.
 
 
 15
 We affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri